UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| vs. § | Criminal No. 24-cr-371-S-10 |
| § | |
| EUGENE WALKER § | |
| Defendant § | |

## SENTENCE DATA SHEET

**DEFENDANT:** Eugene Walker

**CRIMINAL NO:** 24-cr-371-S-10

**DEFENDANT'S IMMIGRATION STATUS:** USC

**GUILTY PLEA:** Count One of the Indictment
Count One: Conspiracy to Commit Wire Fraud

**SUBSTANCE OF PLEA AGMT:**

a) If Defendant pleads guilty to Count 1 of the Superseding Indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the Superseding Indictment at the time of sentencing. The defendant agrees that with respect to any and all dismissed charges he is not a 'prevailing party within the meaning of the 'Hyde Amendment,' Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law;

b) If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently;

c) The United States will not oppose a sentence at the low end of the guideline range.

Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255, and Defendant does not waive his right to contest on direct appeal the district court's order denying Defendant's motion to dismiss (Docket No. 1104).

**COUNT ONE**

**ELEMENTS:** Conspiracy to Commit Wire Fraud Title 18, United States, Code, Sections 1349 and 1343

*First*: That two or more persons made an agreement to commit wire fraud;

*Second:* That the defendant knew the unlawful purpose of the agreement; and

*Third*: That the defendant joined in the agreement with the intent to further the unlawful purpose.

**PENALTY:** Imprisonment not to exceed 20 years; and/or fine not to exceed $250,000.00

**ALT. FINE BASED ON GAIN OR LOSS 18 U.S.C. 3571(d):** Not applicable.

**SENTENCING GUIDELINES:** Advisory

**SUPERVISED RELEASE:** Not to exceed three years. (18 U.S.C. § 3583).

**SPECIAL ASSMT:** $100 per count of conviction

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | Criminal No.  24-cr-371-S-10 |
| | § | |
| EUGENE WALKER | § | |
| Defendant | § | |

**PROFFER**

Defendant is pleading guilty because he is in fact guilty of the charges contained in Count One of the Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

(a.) In the Harris County criminal justice system, a defendant who is charged with a crime may be assigned a bail bond amount from a Judge. The defendant may either post this money directly to the court or may pay for the services of a bail bond company. In the case of the bail bond company, the defendant pays the bail bond company a premium, which is generally a percentage of the total bail bond amount set by the Judge of the court. The bail bond company in turn guarantees to the court that the amount set by the Judge will be paid either by the bond company or its insurer if the defendant does not comply with the proceedings and rules of the court during the prosecution of the defendant. An insurer is placed at greater risk if the defendant does not satisfy the bond conditions. Every bondsman, or individual who is the owner of the bail bonds company, is licensed in the State of Texas. Bondsmen can either obtain a license by showing the bail bond board that they have the assets required to guarantee the bail bond amount, or they are agents of an insurance company and are given authority to act on the insurance company's behalf. The process of assessing risk for a bail bond often requires documentation of collateral, generally by documenting financial assets and liquidity, to include

ownership of real estate and yearly income by third parties who agree to enter the contract between the defendant and the bail bonds company as an additional indemnified party, thereby accepting the financial obligations of paying the full bail bond amount set by the Judge in the event of forfeiture. This additional indemnified party is commonly referred to as a "co-signer" and signs a promissory note, which is a financial debt instrument.

(b.)  AABLE Bonds was a bail bonding company in Harris County, Texas, and AABLE Bonds was an agent of Financial Casualty & Surety (FCS), an insurance company involved in the surety bond business, that maintained offices in 33 states, and was therefore engaged in interstate commerce.

(c.)  Co-Defendant Anthony Perkins was charged in Harris County on February 25, 2015 with capital murder and was detained at the Harris County Jail on a $600,000 bond.  Perkins conspired with Co-Defendant Mary Brown, an employee at AABLE, the Defendant Eugene Walker (a co-signer on Perkins' bond), and others to falsify and/or obtain falsified co-signer reports and check stubs to qualify Perkins, who would not have otherwise qualified for the coverage necessary to meet the terms of his bond, and secure his release from the Harris County Jail. The Defendant knew that he would not qualify to be a co-signer without the falsified check stubs and other falsified financial information. The Defendant also knew that by having co-signers submit falsified information, Co-Defendant Perkins would not have to pay a $600,000 bond up front in cash.

(d.)  More specifically, in a call made by Perkins from the Harris County Jail to the Defendant on April 5, 2021, Perkins and the Defendant discussed the Defendant acting as a co-signer.  Specifically, Perkins asked the Defendant if he had spoken with Brown because she is supposed to be making "them things today," referring to the falsified check stubs that would be used for co-signers on the Perkins bond. Walker responded that he had already sent Brown "that shit" (the information for the check stub).

(e.)  In a jail call on April 6, 2021 between the Defendant, Perkins, and Co-Defendant Magnolia Underwood, the parties again discussed the check stubs. Perkins asked the Defendant if he received his check stub from Brown yet, and the

Defendant subsequently checked his email and said no. The Defendant said that he would call Brown after the call ended to see what was going on. Perkins told the Defendant that he had "everyone else's (check stubs)" and was "just waiting on yours."

(f.) On April 8, 2021, a falsified check stub for the Defendant was emailed from societytaxservices@outlook.com (Co-Defendant Shelibra Jones' email) to Omarion1618@yahoo.com (Underwood's email). Agents conducted a site visit of AS Cleaning Services, the employer listed on the Defendant's check stub and co-signer financial report and learned that AS Cleaning Services did not operate out of that location and the building manger has never heard of AS Cleaning Services. Agents conducted an open-source search for AS Cleaning Services with negative results. Texas Workforce Commission did not have any reported earnings for Walker in 2021, from AS Cleaning Services or any other entity. The Defendant knew the employment information on the check stub and the co-signer financial report was materially false.

(g.) The Defendant's falsified co-signer report and check stub were subsequently emailed or submitted via electronic communication on May 14, 2021 to Bond-Pro, Inc, an electronic communications service/remote computing service provider located in Dahlonega, Georgia. It was reasonably foreseeable that the falsified co-signer financial reports for the Defendant and others would be transmitted in interstate commerce through wire communications, via email or text message, as an attempt to show coverage necessary to meet the terms of the bonds. These fraudulent financial reports were relied upon by the Government and/or the insurance agency/agent to enter into the three-party agreement known as a surety bond.

h.) The amount of the Defendant's falsified check stub was $2,677.60 and represented that he earned $69,617.60 yearly. The $69,617.60 amount was the portion of Perkins' bond that the Defendant was responsible for in the conspiracy.