**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| vs. § | Criminal No. 24-cr-371-S-40 |
| § | |
| **WALLACE THOMAS** § | |
| Defendant § | |

**PROFFER**

Defendant is pleading guilty because he is in fact guilty of the charges contained in Count 36 of the Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

(a.) In the Harris County criminal justice system, a defendant who is charged with a crime may be assigned a bail bond amount from a Judge. The defendant may either post this money directly to the court or may pay for the services of a bail bond company. In the case of the bail bond company, the defendant pays the bail bond company a premium, which is generally a percentage of the total bail bond amount set by the Judge of the court. The bail bond company in turn guarantees to the court that the amount set by the Judge will be paid either by the bond company or its insurer if the defendant does not comply with the proceedings and rules of the court during the prosecution of the defendant. An insurer is placed at greater risk if the defendant does not satisfy the bond conditions. Every bondsman, or individual who is the owner of the bail bonds company, is licensed in the State of Texas. Bondsmen can either obtain a license by showing the bail bond board that they have the assets required to guarantee the bail bond amount, or they are agents of an insurance company and are given authority to act on the insurance company's behalf. The process of assessing risk for a bail bond often requires documentation of collateral, generally by documenting financial assets and liquidity, to include

ownership of real estate and yearly income by third parties who agree to enter the contract between the defendant and the bail bonds company as an additional indemnified party, thereby accepting the financial obligations of paying the full bail bond amount set by the Judge in the event of forfeiture. This additional indemnified party is commonly referred to as a "co-signer" and signs a promissory note, which is a financial debt instrument.

(b.)     AABLE Bonds was a bail bonding company in Harris County, Texas, and AABLE Bonds was an agent of Financial Casualty & Surety (FCS), an insurance company involved in the surety bond business, that maintained offices in 33 states, and was therefore engaged in interstate commerce.

(c.)     In April of 2022, the Defendant Wallace Thomas was charged in Harris County in multiple cases, including charges of felon in possession of a weapon, evading arrest/detention with previous conviction, and evading arrest/detention with vehicle and was detained at the Harris County Jail on a total of $600,000 in bail bonds.  The Defendant conspired with Co-Defendant Oscar Wattell, an employee at AABLE, and others to falsify and/or obtain falsified co-signer reports and check stubs to qualify the Defendant, who would not have otherwise qualified for the coverage necessary to meet the terms of his bond, and secure his release from the Harris County Jail. The Defendant knew that he would not qualify for bonds without the falsified check stubs and other falsified financial information. The Defendant also knew that by having co-signers submit falsified information, he would not have to pay $600,000 in bonds up front in cash.

(d.)     More specifically, in a jail call on April 25, 2022 between the Defendant Wallace Thomas, Co-Defendant Aaliyah Thomas, and Co-Defendant Tawana Jones, the group discussed that fake check stubs that would be used in connection to the Wallace Thomas bond. They also discussed a CashApp payment that was made for two falsified checks for Co-Defendant and co-signer Chelsea Battle.  In a follow-up jail call on April 25, 2022 between the Defendant and Aaliyah Thomas, there is an additional discussion of fake check stubs for co-signers that would be used to support the bond.

(e.)   Agents obtained records from Glams Beauty, the company listed as the employer on the Battle's pay stub, which show that Battle never worked at the company as reflected in her pay stub.

(f.)   Agents obtained records from Eme Tile Designs, the company listed as the employer on Aaliyah Thomas' pay stub, which show that she never worked at the company as reflected in her pay stub.

(g.)   Email records obtained show that Co-Defendant Meghan Tillis, an additional co-signer on the Defendant's bonds, emailed the co-signers' fraudulent check stubs to AABLE. Agents obtained records for Asurion which show that Tillis never worked there as reflected in her pay stub. Tillis knew Wattell from school, and he was Tillis' point of contact at AABLE for the Defendant's bail bonds.

(h.)   The falsified co-signer reports and check stubs for Tillis, Battle, and Aaliyah Thomas were subsequently emailed or submitted via electronic communication on April 26, 2022 to Bond-Pro, Inc, an electronic communications service/remote computing service provider located in Dahlonega, Georgia. It was reasonably foreseeable that the falsified co-signer financial reports would be transmitted in interstate commerce through wire communications, via email or text message, as an attempt to show coverage necessary to meet the terms of the bonds. These fraudulent financial reports were relied upon by the Government and/or the insurance agency/agent to enter into the three-party agreement known as a surety bond.

(i.) The portion of the Defendant's bond that was based on falsified co-signer check stubs and applications was $191,744 and is the amount that the Defendant was responsible for in the conspiracy.