**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | Criminal No. 24-cr-371-S |
| | § | |
| **KAMAIGA GHOLAR (18)** | § | |
| **JAVEON FIELDS (20)** | § | |
| **JAMES BATESON (48)** | § | |
| **KATHERINE O'BRIEN (52)** | § | |

## UNITED STATES' MOTION IN LIMINE REGARDING BUSINESS RECORDS AND NOTICE OF INTENT TO RELY ON LOCAL RULE 55.2

The United States of America requests a preliminary determination of the admissibility of evidence pursuant to the business records exception, under Rules 104 (Relevance), 902(11) (Evidence that is Self-Authenticating) and 803(6) (Exception to Hearsay as Records of a Regularly Conducted Activity). During its case-in-chief in this complex fraud case, the United States anticipates using various records, including Harris County Jail calls, emails, and company records pertaining to the bail bond co-signers. Custodians of the records provided the documents and certified under penalty of perjury that the documents satisfy the requirements of Rule 803(6) to be admissible as business records.

## BACKGROUND

In the Harris County criminal justice system, a defendant who is charged with a crime may be assigned a bail bond amount from a Judge. The defendant may either post this money directly to the court or may pay for the services of a bail bond company. In the case of the bail bond company, the defendant pays the bail bond company a premium, which is generally a percentage of the total

bail bond amount set by the Judge of the court. The bail bond company in turn guarantees to the court that the amount set by the Judge will be paid either by the bond company or its insurer if the defendant does not comply with the proceedings and rules of the court during the prosecution of the defendant. An insurer is placed at greater risk if the defendant does not satisfy the bond conditions. Every bondsman, or individual who is the owner of the bail bonds company, is licensed in the State of Texas. Bondsmen can either obtain a license by showing the bail bond board that they have the assets required to guarantee the bail bond amount, or they are agents of an insurance company and are given authority to act on the insurance company's behalf. The process of assessing risk for a bail bond often requires documentation of collateral, generally by documenting financial assets and liquidity, to include ownership of real estate and yearly income by third parties who agree to enter the contract between the defendant and the bail bonds company as an additional indemnified party, thereby accepting the financial obligations of paying the full bail bond amount set by the Judge in the event of forfeiture. This additional indemnified party is commonly referred to as a "co-signer" and signs a promissory note, which is a financial debt instrument.

In the present case, inmates at the Harris County Jail, utilizing AABLE Bail Bonds, a bail bond company in Houston, Texas, conspired with others to create fraudulent bail bond documents in order to secure the release of the inmates from the jail. (Recorded calls at the Harris County Jail capture statements made in the course of and in furtherance of the conspiracy.) The falsified co-signer financial reports, which included co-signer applications and pay stubs, were used to qualify inmates, charged with criminal offenses, who would not otherwise qualify for the coverage necessary to meet the terms of their bond.

More specifically, Defendants Kamaiga Gholar and Javeon Fields conspired with inmate Nicholas Yoder and others in a scheme to defraud to secure Nicholas Yoder's release from jail. The co-conspirators communicated via calls from Nicholas Yoder at the Harris County Jail, which were recorded. Gholar and Fields assisted in falsifying and/or obtaining falsified co-signer financial reports for the straw co-signers and/or recruiting straw co-signers who represented they worked at companies or earned incomes in the falsified co-signer financial reports when in fact the co-signers did not work at the companies and earn the represented incomes. Gholar emailed the falsified co-signer reports, for straw co-signers Deleon Borders, Pamela Yoder, and others, to AABLE Bail Bonds. The investigation revealed that Borders never worked for the company, Turner Construction, which was indicated on Borders' check stub and that Pamela Yoder did not work for the company, Guardian Angel Home Healthcare, which was indicated on Pamela Yoder's check stub. Gholar made CashApp payments in connection with her role in the scheme to defraud.

O'Brien conspired with inmate Roemello Burros in order to secure Burros' release from jail. O'Brien and Burros communicated via calls from Burros at the Harris County Jail, which were recorded. O'Brien assisted in falsifying and/or obtaining falsified co-signer financial reports for the straw co-signers who represented they worked at companies or earned incomes in the falsified co-signer financial reports when in fact the co-signers did not work at the companies or earn the represented incomes. The straw co-signers, utilized by O'Brien and Burros, included Christopher Colwell, Kristopher Thomas, Brittney McClellan, and Kathleen O'Brien. The investigation revealed that Colwell, Thomas, and McClellan never worked for the company, Baker Ripley, which was indicated on their check stubs. The investigation also revealed that Katheleen

3

O'Brien did work for the company, Hill Country Memorial Hospital, which was indicated on her check stub but that the check stub and the income amount were falsified.

Defendant James Bateson conspired with inmate James Palladina and served as a straw co-signer for Palladina's bond, representing that he worked at a company when in fact he did not work at that company, in order to help secure Palladina's release from jail. More specifically, the investigation revealed that Bateson never worked for the company, FAB & J Mobile Cell Repair, which was indicated on Bateson's check stubs and in his co-signer application which he submitted at AABLE Bail Bonds. Palladina communicated with co-conspirators via calls from t the Harris County Jail, which were recorded.

The falsified co-signer applications and check stubs referenced above were subsequently submitted via electronic communication, including but not limited to Bond-Pro, Inc, an electronic communications service/remote computing service provider located in Dahlonega, Georgia.

At this time, the United States anticipates two weeks for its case-in-chief and anticipates using various records. These records have been produced in discovery throughout the pendency of this case, and on September 15, 2025, the United States filed an Exhibit List and an Offer of Trial Exhibits and Request for Authentication pursuant to Local Rule, listing the records it intended to introduce.

To streamline the trial and for efficiency, the United States seeks the Court's ruling on the records from the following entities:

1. Harris County jail recorded calls (Government Exhibits 4-15, 67-73, 84-88);

2. Email records for account Kgholar1.kg@gmail.com, Defendant Kamaiga Gholar's email (Government Exhibits 22-36);

4

    3.    CashApp records for Defendant Kamaiga Gholar and Co-Defendant Jeanine Victor (Government Exhibit 37).

The United States has provided copies of items that are offered as exhibits at trial, with business records affidavits, and provides notice herein that it intends to rely on Local Rule 55.2.

## DISCUSSION

FRE 104 allows the Court to "decide any preliminary question about whether . . . evidence is admissible." FED. R. EVID. 104(a). In making this determination, "the court is not bound by evidence rules, except those on privilege." *Id.* This rule includes determining whether documents fall within the business records exception to the hearsay rule. Such determinations advance the elimination of unjustifiable expense and delay purpose of the Federal Rules of Evidence. *See* FED. R. EVID. 102.

The prerequisites for admissibility under the business records exception must be established by a preponderance of the evidence. *See Bourjally v. United States*, 483 U.S. 171, 175 (1987). Rule 803(6) provides that a record is admissible if: (1) the record was made at or near the time by or from information transmitted by a person with knowledge; (2) it was kept in the regular conducted activity of a business; (3) making the record was a regular practice of that activity; (4) all these conditions are shown by the testimony of a custodian or other qualified witness, or by a certification that complies with 902(11) or (12); and (5) the opposing party does not show that the source of information or method or circumstances of preparation indicate a lack of trustworthiness. FED R. EVID. 803(6).

In this case, the United States seeks to admit records from the above listed entities through certifications obtained from the custodians of record, instead of through testimony at trial. Rule 902

5

provides that some evidence is self-authenticating, including domestic records of a regularly conducted activity. Federal Rule of Evidence 902(11) provides that "a party intending to offer a record into evidence . . . must provide written notice of that intention ... and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them." FED. R. EVID. 902(11). The Fifth Circuit has held that five days is sufficient notice. *See United States v. Olguin*, 643 F.3d 384, 391 (5th Cir. 2011). The certifications from the custodians of record from the above listed companies affirm under penalty of perjury that the records satisfy the requirements of Rule 803(6).

Together, Rules 803(6) and 902(11) eliminate the need to incur the expense of producing foundation witnesses. *See* FED. R. EVID. 803, Advisory Committee Notes to 2000 Amendment. The admission of such documents into evidence in federal courts is routine. *See Olguin*, 643 F.3d at 390 (5th Cir. 2011); *see also United States v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008) (noting that Rule 902(11) provided for the admission of business records but finding that a three-day notice was untimely); *United States v. Jones,* No. CR 15-174, 2016 WL 10704381, at *3 (E.D. La. Feb. 17, 2016) (holding that records from Facebook, Google, Marriott, and Samsung were business records before trial based on 902(11) certifications); *United States v. Pizarro*, No. CR 16-63, 2017 WL 3252656, at *2 (E.D. La. July 31, 2017) (holding that records from FedEx, United, and American Express were business records before trial based on 902(11) certifications).

Additionally, there is no confrontation issue, because "business records are not testimonial in nature and their admission at trial is not a violation of the Confrontation Clause." *United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007). The Fifth Circuit further held that "Crawford does not apply to the foundational evidence authenticating business records in preliminary

6

determinations of the admissibility of evidence." *Morgan*, 505 F.3d at 339. The Fifth Circuit found compelling the fact that the Supreme Court in Crawford had identified business records as non-testimonial; and thus, reasoned "it would be odd to hold that the foundational evidence authenticating the records falls under the Confrontation Clause." *Id.* (quoting *United States v. Ellis*, 460 F.3d 920, 927 (7th Cir. 2006) (internal brackets omitted)). Moreover, since written certifications attesting to the authenticity of business records are "routine cataloguing of an unambiguous factual matter," there is no benefit to the "truth-seeking process" to require records custodians to appear in the "countless criminal cases" throughout the country merely to establish foundational requirements. *Id.* (quoting *United States v. Weiland,* 420 F.3d 1062, 1077 (9th Cir. 2005)).

WHEREFORE, the United States respectfully requests that the Court make a preliminary ruling, pursuant to Rule 104, and admit the above-described records as business records, pursuant to Rule 803(6). A proposed order is attached.

        Respectfully submitted,

        NICHOLAS J. GANJEI
        United States Attorney

By:   /s/ Michael Day
        Michael Day
        Stephanie Bauman
        Assistant United States Attorneys
        U.S. Attorney's Office, S.D. Texas
        Tel: (713) 567-9000

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing **UNITED STATES' MOTION IN LIMINE REGARDING BUSINESS RECORDS AND NOTICE OF INTENT TO RELY ON LOCAL RULE 55.2** was filed with the District Clerk's Office and copies were mailed, faxed, e-mailed via ECF notification, or hand-delivered on the 21st day of September 2025 to counsel of record for the Defendants.

                                              s/ *Michael E. Day*
                                              Michael E. Day
                                              Assistant United States Attorney